#058046

ORIGINAL

ECF

FILED
SEP 9 2003
U.S. COURT OF
FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**DON STEBBINS, d/b/a**
**COMMUNITY LIFE MEDIA,**

**Plaintiff,**

**v.**

**No. 03-2130C**

**THE UNITED STATES,**

**Defendant.**

## COMPLAINT FOR BREACH OF CONTRACT

### Jurisdiction

This Court has jurisdiction pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1) and the Contracts Dispute Act ("CDA"), 41 U.S.C. §§ 601 *et seq*. because the action is against the United States and is founded upon an express or implied contract with the United States.

### The Parties

Plaintiff, Don Stebbins d/b/a/ Community Life Media ("CLM"), was a sole proprietorship with its principal place of business at 500 Marquette NW, Albuquerque, NM 87101. At all times relevant hereto Plaintiff was engaged in the business of government based media partnerships, was a leading producer of culturally based media programming, and was properly licensed to transact business in the State of New Mexico. The Defendant, United States of America, in this matter is the Department of Agriculture (Forest Service, Southwest Region, Cibola National Forest) ("Cibola"), Office of the Judicial Officer, 1449 South Building, Washington, D.C. 20250-9204.

## Procedural History

On January 3, 2003, CLM filed with the Cibola Forest Service Contracting Officer (Liz Agpaoa, Forest Supervisor) a request for Contracting Officer's final decision. The Forest Service has failed to issue a decision, in writing, on the contract claim. Pursuant to 41 U.S.C. § 605(c)(5), that failure to issue a decision within the period required is deemed to be a decision denying the claim, authorizing the commencement of this suit on that claim.

## Statement of Facts

1. CLM and Cibola entered into a Challenge Cost-Share Agreement ("CSA") in January, 1998 (Contract No. CCS-3-98-03-013). *See* Exhibit "A." The CSA was authorized by the Forest Service by Liz Agpaoa, Forest Supervisor. The CSA provided that CLM would develop media for installation upon Cibola's new observation deck. This elaborate interactive display was designed to educate visitors to Sandia Crest, a mountaintop observation area overlooking the Rio Grande River Valley and Albuquerque, New Mexico. Its unique vista extends from Santa Fe and its neighboring tribal lands and ranch lands, to the desert reaches of White Sands National Monument.

This CLM/Cibola partnered project was designed to present living histories of the endangered cultural landscapes of the vista region, from Indian pueblos to Spanish villages to multi- generational ranches. The public presentations would derive from contemporary oral histories, as collected by CLM and displayed via unique outdoor signage with steel-frame installations, along with optional audio headsets. In return for CLM's investment, CLM would be compensated through local community logo sponsorship, displayed in a lower corner of the signage. Cibola promised to allow CLM exclusive sponsorship for the installation media for a

five-year term. CLM anticipated receiving revenue of an average of $80,909 per year from private sponsors.

2. A private partner budget was submitted by Cibola to CLM which included an expected cost share expenditure of $60,000 from CLM. When the CSA was executed, the observation deck was scheduled to be completed in 1998. When it became clear that the deck would not be completed by Cibola until 1999, the parties executed a one-year extension of the CSA. CLM submitted a revised private partner budget, increasing its expenditure to $225,000. This revision was accepted by the new Sandia Ranger, Clifford Dils, in February 1999.

3. In March 1999, consistent with the terms of the CSA, Cibola, through its CSA representative Bob Cordts, submitted to CLM an unsigned Memorandum of Understanding ("MOU") addressing: a) Cibola's approval of the sponsorships for the installation media and; b) the anticipated five-year term of the MOU. Cibola represented to CLM that the submission of this MOU had been reviewed by appropriate United States Forest Service ("USFS") staff. Cibola also indicated that the final approval of the MOU would be forthcoming. Cibola instructed CLM to continue operation of the Partnership, and to continue to spend its budgeted $225,000. In reliance of Cibola's representations, CLM continued to spend money based upon its expected return from future sponsorship revenue.

4. On April 1, 1999, Regional Forester, Eleanor S. Towns, signed a Memorandum of Understanding ("Regional MOU") that was entered into by CLM and the Southwestern Region of the U.S. Forest Service. The purpose of this MOU was to encourage CLM to replicate the Cibola CSA by having CLM survey the other individual Ranger District offices within the region

to see if there were interest in public education media projects similar to the one being developed with Cibola.

5. In May, 1999, after completion of the observation deck, CLM presented a draft of the installation media to Cibola staff, who instructed CLM to continue its work under the CSA.

6. In August 1999, after District management changes and attendant USFS delays, Acting District Ranger Karen Carter extended the Cibola/CLM CSA for an additional year. Her transmittal letter recommended CLM move directly to the completion stage of the partnership project, which involved gaining District approval of the sign text and pictures. The extension was not accompanied by any request for additional submissions by CLM. Subsequent correspondence from the Sandia Ranger indicated that CLM's installation media as presented in May, 1999, was indeed consistent with the District's own work-plan.

7. In February, 2000, Ranger Dils submitted to CLM a letter outlining Cibola's unilateral and unexpected changes in the Cibola/CLM Cost-Share Partnership. One such change was that the forthcoming MOU would be cut from a term of five to two years. Although the letter alluded to prior negotiation of these matters by the parties, there had, in fact, been no such negotiation nor CSA amendments. Mr. Dils' letter, which purported to clarify the nature of the Cost-Share Agreement, did not reference sponsorships for the installation media, which was a key provision of the signed Cost-Share Agreement. Yet the capacity for these sponsorships had formed the basis of CLM's investment in this public/private partnership.

8. CLM continued its partnership operations into the spring of 2000, given the need to obtain final approval for the deck signage. However, because of the recent conflicting accounts from Cibola regarding the USFS's terms of participation, CLM asked for and received a

meeting with Regional Forester Eleanor Towns and Deputy Regional Forester Abel Camarena, in May 2000. During that meeting, Mr. Dils stated that he was willing to postpone installation of the media on the deck until his preferred partnership terms could be formally added to the CSA through negotiation and amendment.

9. Following this meeting, CLM received a letter dated July 10, 2000, from Regional Forester Eleanor S. Towns, informing CLM that both the operation of the CSA and the Regional MOU were being terminated without cause. At the time of this breach, CLM had been working on the project for 30 months. Due to the delays, CLM had, at that date, invested over $300,000 in the project.

10. As a result of the Forest Service's failure to allow CLM to develop exclusive sponsorship of the media project, CLM sustained damages. CLM provides two alternative calculations of damages: lost revenue of $404,543 or compensatory damages of $333,000.

**COUNT I**

**Breach of express contract**

11. Plaintiff incorporates by reference the foregoing allegations.

12. Cibola agreed and promised to provide exclusive sponsorship to CLM. In consideration for the right to sponsorship, CLM agreed and promised to develop media installation for Cibola. Cibola breached the contract in two respects: (i) by failing to allow CLM to obtain sponsorship; and (ii) by terminating the agreement with CLM. CLM was deprived of the benefit that it reasonably anticipated receiving from its agreement with Cibola. Because of the verbal assurances and agreements made after the execution of the written agreement, Cibola

created additional contractual obligations for itself for which CLM paid substantial and valuable consideration and suffered a detriment.

**COUNT II**

**Breach of implied-in-fact contract**

13. Plaintiff incorporates by reference the foregoing allegations.

14. Cibola and CLM intended to enter into a five-year memorandum of understanding (MOU) to allow joint use of the Observation Deck within the Sandia Crest Observation Site. The terms of the MOU were clear and unambiguous. CLM relied upon designated CSA representative Bob Cordts and Acting District Ranger Karen Carter, who had the authority to bind the government in their actions.

**COUNT III**

**Breach of implied duty of good faith and fair dealing**

15 Plaintiff incorporates by reference the foregoing allegations.

16. Cibola, in bad faith, intentionally set out to deprive CLM of the benefits of the agreements. Cibola's actions breached the implied duty of good faith and fair dealing.

**COUNT IV**

**Tortious breach of contract**

17. Plaintiff incorporates by reference the foregoing allegations.

18. Cibola made misrepresentations that included, without limitation (i) its ability or inability to engage in media sponsorship; (ii) its encouragement for CSA to enter the final stage of approval and design of steel-framed signs; (iii) its encouragement that CLM initiate arrangements with other Forests for substantially similar cultural media partnerships; and (iv) its

willingness to provide sponsorship referrals to CLM. These misrepresentations were material; the misrepresentations induced CLM to enter into the contract and to continue to perform its obligations and incur expenses. CLM was justified in relying on the misrepresentations.

**Prayer for Relief**

WHEREFORE, CLM seeks a judgment against the United States for an award of lost revenue of $404,543. In the alternative, CLM seeks compensatory damages of $333,000. CLM also seeks an award of attorneys' fees and costs.

Dated: September 8, 2003

FREEDMAN BOYD DANIELS HOLLANDER
GOLDBERG & CLINE P.A.

By: ______________________
John W. Boyd
Sara Berger
20 First Plaza, Suite 700 (87102)
P.O. Box 25326
Albuquerque, NM 87125
Off: (505) 842-9960
Fax: (505) 842-0761

Attorneys for Plaintiff, Don Stebbins d/b/a/
Community Life Media

PLEASE RECYCLE

RAQ1931F00 -C



No. CCS-3-98-03-013

**CHALLENGE COST-SHARE AGREEMENT**

between

COMMUNITY LIFE MEDIA COMPANY

and

Cibola National Forest, USDA Forest Service

THIS CHALLENGE COST-SHARE AGREEMENT, made and entered into by and between Community Life Media Co. hereinafter referred to as the CLM and the Cibola National Forest, US Department of Agriculture, Forest Service, hereinafter referred to as the Forest Service, under the provisions of the Interior and Related Agencies Act, P.L. 101-512.

WITNESSETH:

WHEREAS, the Forest Service manages National Forest lands which includes abundant interpretive/recreation opportunities and,

WHEREAS, the Forest Service has the responsibility to make these interpretation/recreation opportunities available to the public, and,

WHEREAS, it is mutually beneficial for both the CLM and the Cibola National Forest to work cooperatively to place interpretive exhibits on the Sandia Crest Observation Site.

WHEREAS, the CLM are willing to perform the project work on National Forest lands, as mutually agreed to.

NOW THEREFORE, in consideration of the above premises, the parties hereto agree as follows:

A. CLM SHALL:

1. Perform (or have performed) all necessary Project planning, design, development and construction for the interpretive exhibits as described in the attached financial project plan (see Exhibit "A").

2. Provide all necessary labor, needed to complete all project work. Prepare for Forest Service approval a project work plan for Interpretation that includes thematic recommendations.

EXHIBIT

A

No. COS-3-98-03-013

3. When necessary and agreed upon with the Forest Service, provide equipment for use on Forest Service projects on a prescribed and agreed to basis. Types of equipment and use rates to be entered in the financial project plan (see Exhibit "A").

4. Provide leadership for planning and the development of the construction/maintenance of the improvements on National Forest land as well as providing technical expertise in design and construction of the project.

5. Agree to transfer the exhibits to the Cibola as government property except for any electronic media.

B. THE FOREST SERVICE SHALL:

1. Provide to CLM any technical expertise in the design of the project as identified in the attached financial project plan (see Exhibit A).

2. The District Ranger shall retain the right of refusal over the content of all media, including sponsorship logos. It is understood that CLM will retain all copyright and license of the signage content, in concert with the requirements of the ongoing exhibits, which are approved by the District Ranger in the Project Plan. The Cibola understands that no other partner will be used to display interpretive exhibits at the Sandia Crest for a period of five years from the approval date of this agreement. The Cibola may however use its own displays. This agreement excludes the Information Center, Crest Nature Trail, binoculars on the Observation Deck and Communication Site and only includes the Deck area and interpretative exhibits

C. IT IS MUTUALLY AGREED AND UNDERSTOOD BY AND BETWEEN THE SAID PARTIES THAT:

1. No part of this agreement shall entitle the CLM, contributors, or donors to any share or interest in the project other than the right to use and enjoy the same under the existing regulations of the Forest Service.

2. Improvements placed on Forest Service land at the direction of either of the parties, shall thereupon become the property of the United States, and shall be subject to the same regulations and administration of the Forest Service as all other National Forest improvements of a similar nature.

3. This agreement in no way restricts the Forest Service from participating with other public or private agencies, organizations, and individuals or from accepting contributions and gifts for the improvement, development, administration, operation, and preservation of this trail system on the Sandia Ranger District.

4. The work under this agreement shall be completed no later than September 30, 1998.

5. The Forest Service, in writing, may terminate the agreement in whole, or in part, at any time before the date of expiration, whenever it is determined that the other party(s) has materially failed to comply with the conditions of this agreement. The other party(s) shall not incur any new obligations for the terminated portion of the agreement after the effective date, and shall cancel as many obligations as is possible. Full credit shall be allowed for the Forest Service share of the obligations incurred to the effective date and all noncancellable obligations incurred by the cooperating party(s) prior to termination.

No. CCS-3-98-03-013

6. Any monies that are payable from the United States under this agreement to any person or legal entity not an agency or subdivision of a State or local government may be subject to administrative offset for the collection of any debt the person or legal entity owes to the United States. Information on the person's or legal entity's responsibility for a commercial debt owed the United States shall be disclosed to consumer or commercial credit reporting agencies.

7. Nothing herein shall be construed as obligating the Forest Service to expend or as involving the United States in any contract or other obligation for the future payment of money in excess or appropriations authorized by law and administratively allocated for this work.

8. No member of, or delegate to, Congress or Resident Commissioner shall be admitted to any share or part of this agreement, or to any benefit that may arise therefrom; but this provision shall not be construed to extend to this agreement if made with a corporation for its general benefit.

9. This agreement may be revised as necessary by mutual consent of both parties, by the issuance of a written amendment, signed and dated by both parties.

10. Either party may terminate the agreement by providing 60 days written notice. Unless terminated by written notice, this agreement will remain in force until project is completed.

The cooperator shall comply with Title VI of the Civil Rights Act of 1964, that no person in the United States shall, on the ground of race, color, handicap or national origin, be excluded from participation, be denied the benefits of, or be otherwise subjected to discrimination under any program or activity for which the recipient receives Federal financial assistance and will immediately take any measures necessary to effectuate this agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the last date written below.

1/2/98
Date

Community Life Media Company
Don Stebbins

UNITED STATES FOREST SERVICE

1/22/98
Date

Name

Forest Supervisor 1/22/98

~~FED TAX ID #~~

No.