1587 - OTHER AGREEMENTS. Use Participating Agreements (PA), Challenge Cost-Share (CCS) Agreements, Research Joint Venture Agreements (RJVA), Cooperative Research and Development Agreements (CRDA), and Research Cost-Reimbursable Agreements (RCRA) when no other instruments are prescribed by law, regulations, or subsequent sections of this chapter.

1587.01 - Authority.

PL 94-148

1. Cooperative Funds and Deposits Act of December 12, 1975. (FSM 1580.12).

2. Interior and Related Appropriations Act of 1992. (FSM 1580.12).

3. National Agricultural Research, Extension and Teaching Act of 1977, as Amended. (FSM 1580.13).

4. Federal Technology Transfer Act of 1986. (FSM 1580.11).

1587.03 - Policy. The Forest Service, by respective statutes, may execute several types of instruments that are not considered procurement or Federal assistance relationships within the coverage of the Federal Grants and Cooperative Agreements Act of 1978 (31 U.S.C. 6301-6308). These instruments typically involve a joint accomplishment of work and have direct benefits to both the cooperator and the Forest Service. These instruments are commonly referred to as partnerships; however, they have been assigned specific agreement titles in this section. **Execution of these instruments shall not circumvent procurement, printing, property, or personnel procedures where their use is appropriate or required.**

In Cooperative Research and Development Agreements (CRDA) and Research Cost-Reimbursable Agreements (RCRA), the Forest Service and cooperators shall share mutual interests. The cooperator does not necessarily have to benefit in the same qualitative way.

In all cost-sharing arrangements, that is, Participating Agreements (PA), Challenge Cost Share Agreements (CCS), and Research Joint Venture Agreements (RJVA), the Forest Service and the cooperator(s) shall share mutual interests and benefit in the same qualitative way from the objective of the agreement. An example of a cost-sharing agreement would be where the Forest Service and the cooperator(s) share a mandate for wildlife habitat improvement, and both parties contribute significant resources to accomplish a wildlife habitat enhancement project on land under Forest Service jurisdiction. The Forest Service benefits by getting an on-the-ground project completed, and the cooperator benefits by lever aging its cash and/or other resources to complete a project that accomplishes part of its mission.

In some situations it may appear that the Forest Service and cooperator share mutual interests and benefits. However, the cooperator's contribution should be analyzed carefully. For example, when the cooperator offers to perform services, some of which are contributed gratuitously and some of which are reimbursed by the Forest Service, the cost of reimbursing the cooperator may be the same as the rate for completion of the total project that could be obtained through competitive procurement procedures (making the cooperator's contribution meaningless). This type of project should be accomplished using Government procurement procedures.

The Forest Service may not enter into cost-sharing arrangements for goods or services where the cooperator's only motive is to obtain paid employment, even if the cooperator contributes or appears to contribute to the project. An example would be where a local contractor proposes to provide reimbursable backhoe services to dredge a pond at a discounted price, offering what appears to be a contribution. In this situation, while the Forest Service and the cooperator share mutual interests, they do not benefit in the same qualitative way since dredging the pond is of no benefit to the cooperator other than providing a source of paid employment. In addition, the discounted price offered by the cooperator may be nothing more than the competitive rate for backhoe services. This type of work should be performed pursuant to Government procurement procedures.

With the exception of CRDA's, it is not appropriate for the Forest Service to enter into agreements which contemplate development and sale of a product for profit, either directly or indirectly by the cooperator. The Forest Service may only entertain profit interests under contracts, permits, licenses, leases, and CRDA's. This chapter does not cover contracts, permits, licenses, and leases.

Where reimbursement is appropriate, reimburse only actual costs incurred by the cooperator in performing the project. Reimbursement to cooperators is prohibited under CRDA's. In-kind contributions, that is, those contributions for which the cooperator incurs no expense (such as volunteer labor), are not reimbursable by the Forest Service. Ensure that all in-kind contributions are displayed on invoices submitted to the Forest Service and are verifiable in the cooperator's accounting records for audit purposes. The cooperator's contributions may include their direct costs, indirect costs, in-kind contributions, or other non-Federal funds or services donated to them by other parties. The cooperator may

not use funds from other Federal agencies for its contributions to the Forest Service, unless specifically provided by the Federal statute authorizing those funds. Require that program income be deducted from the cost of the project; for example; revenue as a result of fees collected from conference attendees. Specify the use of program income in the agreement. Ensure that the cooperator itemizes funding from other Federal agencies in the financial plan.

Do not accept cooperator language in an instrument that agrees to indemnify, defend or hold harmless the cooperator, or its agent or employees from and against any or all losses, damages, liabilities, claims, or judgements resulting from, related to, or arising from the instrument.

1. Discussion Items. Special consideration shall be given to the following items prior to serious discussion with a potential cooperator:

a. Do not enter into such an arrangement when a potential conflict of interest or the appearance of a conflict of interest exists.

b. Do not use an organization as a "strawman" wherein the Forest Service contemplates using them to accomplish something indirectly that it is prohibited from doing directly.

c. Consider the cooperator's capability to meet its obligations, that is, financial capacity and management skills.

d. Ensure project consistency with the Forest Plan.

e. Ensure Forest Service follow-through on all aspects of the contemplated work, including administration, long-term maintenance, and subsequent funding.

f. Ensure project timeliness.

g. Ensure lead time sufficient to obtain appropriate approvals.

h. Do not enter into agreements where the Forest Service would directly endorse a cooperator's product or service without prior written approval from the Chief. Do not enter into agreements where the Forest Service would directly market a cooperator's product or service by mail or other means.

i. Ensure that each party shares the costs of a project commensurate with the benefits received, maintaining the balance of prorated shares as the costs or work changes.

j. Ensure that the cooperators do not transfer their copyrights for any publication, written material, or audiovisual production which is developed to a designee (third party) for sale and distribution of the item for profit.

(4) Range operation, maintenance, and improvement, and

(5) Work in a non-forest environment (warehouses, shops, and offices).

1587.11c - Form of Agreement. Bilaterally execute a Participating Agreement (PA) prior to receiving funds or performing work by the Government or cooperator. In the narrative agreement:

1. Cite the appropriate statutory authority to enter into the PA,

2. Cite a Forest Service Federal Identifier Number for tracking,

3. Provide a clear description of the terms and conditions for performance of the work,

4. Include a financial plan reflecting a detailed break-down of costs if applicable,

5. Specify an appropriate period for performance,

6. Include any reporting requirements, and

7. Include mandatory Forest Service clauses.

1587.12 - Interior and Related Agencies Appropriations Act of 1992. This Act authorizes the Forest Service to cooperate with other parties to develop, plan, and implement projects that are mutually beneficial to the parties that enhance Forest Service activities. Finance projects with matching funds from cooperators. Cooperators may be public and private agencies, organizations, institutions, and individuals.

1587.12a - General Requirements. The following conditions apply:

1. Funding. This authority may be used by the Forest Service to reimburse the cooperator for part of the costs of material and/or labor or to accept non-reimbursed services from entities other than individuals that are not authorized under the Volunteers in the National Forests Act of 1972 (16 U.S.C. 558 (note)). No advance payments may be made to cooperators. The Forest Service and cooperators shall contribute resources to perform the work, share a mutual interest, and benefit in the same qualitative way. All appropriations available to accomplish Forest Service activities may be used. Appropriated funds may not be used for permanent improvements to private property unless specifically authorized by law (FSM 6511.18c).

2. Matching Contributions. Require matching contributions. Ensure that Forest Service contributions are matched or exceeded annually by cooperator contributions. In each CCS agreement, attempt to negotiate a dollar-for-dollar match from the cooperator. The cooperator may satisfy the matching requirement by providing cash, real or personal property, services, and/or in-kind contributions, such as volunteer labor.

3. Applicability of Contracting. Under challenge cost-share authority, regulations governing Federal assistance, that is, grants and cooperative agreements and the Federal Acquisition Regulations (FAR) do not apply when the cooperator performs work with its own resources. Ensure that cooperator contracts are awarded on a competitive basis. Do not use the applicability of contracting to acquire equipment.

a. Applicability of FAR. Where the cooperator contributes only cash and/or real or personal property and does not intend to perform the work, a collection authority, in addition to the participating agreement authority, shall be cited in the agreement, and the Forest Service shall perform the work either in-house or by contract. If the cooperator's contribution is cash and the Forest Service procures the services or supplies using those funds, the FAR applies.

b. Cooperator Contracts. When the work is not jointly performed and the cooperator contemplates contracting all or part of the work, the cooperator must provide a substantial cash contribution (50 percent or more) toward the cost of the contract. The Forest Service is required to award the contract in situations where the cooperator's cash contribution is under 50 percent.

c. Applicability of Federal Wage Requirements. Where the cooperator awards the contract and Federal funding is contributed, Federal wage provisions may apply. If Federal contributions to a cooperator's construction contract exceed $2,000 the Davis-Bacon Act applies. If Federal contributions to a cooperator's service contract exceed $2,500 the Service Contract Act applies.

4. Printing. Challenge cost-share authority does not preclude the applicability of GPO regulations when Federal dollars are used for printing, regardless of whether the printing is accomplished by the cooperator by contract or in-house.

5. Audiovisual Productions. Audiovisual productions require specific approval and contracting procedures depending upon determination of ownership of the audiovisual production. Determine ownership based on the parties' contributions to the production. Where the Forest Service and/or other Federal agencies contribute 50 percent or more of the total costs, including in-kind contributions, to develop an audiovisual production, it is owned by the Forest Service.

Audiovisual productions that are owned by the Forest Service are subject to USDA approvals and the government-wide audiovisual contracting procedures addressed in Office of Federal Procurement Policy Letter 79-4. Forest Service audiovisual productions concerning issues that are strictly regional in nature are permitted without USDA approval. Cooperator audiovisual productions are not subject to USDA approvals and the government-wide audiovisual contracting system. However, obtain a copy of the cooperator's video production and retain the right to duplicate the video for Government purposes. Duplication of the video for Forest Service purposes shall be accomplished using Government procurement procedures.

6. Employee Status. Challenge cost-share authority does not authorize conveyance of Federal employee status on the cooperator's employees for the purpose of liability coverage.

7. Modifications. Modify CCS agreements in writing at any time with the mutual consent of the parties prior to the performance of any revised or new work. However, do not modify the basic agreement to the detriment of the Forest Service, that is, by decreasing the amount of work without a corresponding decrease in Forest Service and cooperator cost contributions, or by increasing the amount of work without a corresponding increase in Forest Service and cooperator cost contributions. Retain a contribution ratio based on the prorated shares defined in the basic agreement for all cost increases and/or decreases. For example, if an initial CCS reflects a Forest Service contribution of 50 percent and a cooperator contribution of 50 percent of the total cost of the project, ensure a modification involving a cost increase retains the 50/50 contribution ratio. Support any increase or decrease in cost by changes in the description of work which fall within the scope of the basic agreement. Fund modifications increasing Forest Service contributions from appropriations current at the time of modification.

Ensure that the executed modification document contains the following items:

a. The CCS agreement number and modification number,

b. A statement incorporating the terms and conditions of the original CCS agreement and the total amount of funds obligated under the modification,

c. A narrative description of the revised or new work within the scope of the original CCS agreement,

d. A revised financial plan, providing a detailed break-down consistent with the original CCS agreement,

e. A management code, and

f. Bilateral signature blocks.

g. For open-ended agreements, incorporate and update the availability of funds clauses described in FSH 1509.11, chapter 70.

This was modified in 2002.

1587.12b - Type of Work. See FSH 1509.11, chapter 70 for sample agreements. Examples of work permissible under the Act are:

1. A wildlife enhancement project completed by a non-profit organization and the Forest Service on a Forest Service site. The non-profit organization is chartered to enhance wildlife habitat for increasing wildlife populations. The non-profit organization has obtained non-Federal cash donations and agrees to use them for the

purchase of materials and reimbursement of a portion of the organization's direct labor costs. The employees of each party to the agreement are meeting at the forest site to plant willows and install nesting boxes. No funding is being exchanged between the Forest Service and the non-profit organization.

2. An accessibility project jointly funded by several non-profit organizations and the Forest Service on a Forest Service site. The non-profit organizations are chartered to assist physically disadvantaged persons. The Forest Service has a need to broaden accessibility of the site. The total cost of the project is estimated to be $100,000, including the design work by Forest Service personnel valued at $10,000 the fabrication by an independent contractor valued at $80,000, and installation by all parties valued at $10,000. The non-profit organizations contribute $47,000 of the total project costs ($40,000 in cash to the Forest Service for contract costs and $7,000 in labor value for installation). A collection authority is cited on the CCS agreement to collect the $40,000 contribution from the non-profit organizations. The remaining is contributed by the Forest Service ($10,000 in labor for design work, $40,000 in cash for contract costs, and $3,000 in labor for installation). The Forest Service contracts on a competitive basis for the fabrication of the project using Government procurement procedures. After receipt of the fabricated materials, all parties meet at the site to install.

<u>1587.12c</u> - <u>Form of Agreement</u>. Bilaterally execute a CCS agreement prior to receiving funds or performing by the Government or cooperator. Ensure that the narrative agreement:

1. Cites the appropriate statutory authority to enter into the agreement,

2. Cites a Federal Identifier Number for tracking,

3. Provides a clear description of the terms and conditions for performance of the work,

4. Includes a financial plan reflecting a detailed break-down of costs if applicable,

5. Specifies an appropriate period for performance,

6. Includes any reporting requirements, and

7. Includes mandatory Forest Service clauses.

<u>1587.13</u> - <u>National Agricultural Research, Extension and Teaching Act of 1977, as Amended</u>. (FSM 1580.13). The Act authorizes the Forest Service to use:

1. Research joint venture agreements (RJVA) with any entity or individual to serve the mutual interest of the parties in agricultural research, extension, and teaching activities (7 U.S.C. 3318(b)), and

FSH 1509.11 - GRANTS, COOPERATIVE AGREEMENTS, AND OTHER AGREEMENTS HANDBOOK
WO AMENDMENT 1509.11-95-1
EFFECTIVE 4/21/95

## CHAPTER 60 - OTHER AGREEMENTS

This chapter prescribes uniform administrative requirements applicable to all Participating Agreements, Challenge Cost-Share Agreements, Research Joint Venture Agreements, Cooperative Research and Development Agreements, and Research Cost-Reimbursable Agreements. See FSH 1509.11, section 03 for direction on deviations from these requirements.

1. Participating Agreements. Participating Agreements are the instruments used when the Forest Service enters into cooperatively performed, mutually beneficial National Forest projects with non-Federal parties in four specific areas: (a) cooperative pollution abatement, (b) cooperative manpower, job training, and development programs, (c) development of publications of cooperative environmental education and forest history materials, and (d) forestry protection.

2. Challenge Cost-Share Agreements. Challenge Cost-Share Agreements are the instruments used when the Forest Service cooperatively develops, plans, and implements projects with other parties that are mutually beneficial to the parties that enhance Forest Service activities.

3. Research Joint Agreements. Research Joint Venture Agreements are the instruments used when the Forest Service research units cooperatively perform projects of mutual interest with other parties in agricultural research, extension, and teaching activities.

4. Cooperative Research and Development Agreements. Cooperative Research and Development Agreements are the instruments used when the Forest Service seeks to transfer Federally owned or originated technology to State and local governments and to the private sector.

5. Research Cost-Reimbursable Agreements. Research Cost-Reimbursable Agreements are the instruments used when the Forest Service research units acquire goods or services, including personal services, from State Cooperative institutions, without seeking competition, to conduct agricultural research, extension, or teaching activities of mutual interest.

See FSM 1587 for a more detailed explanation of these agreements and their respective general requirements.

60.1 - Authority. The Forest Service is authorized to enter into several types of instruments that are not considered procurement or Federal assistance relationships within the coverage of the Federal Grants and Cooperative Agreements Act of 1978 (31 U.S.C. 6301-6308). The following Federal statutory authorities are available for entering into other agreements:

1. Cooperative Funds and Deposits Act of December 12, 1975. (FSM 1580.12). (Participating Agreements).

2. Interior and Related Appropriations Act of 1992. (FSM 1580.12). (Challenge Cost-Share).

3. National Agricultural Research, Extension and Teaching Act of 1977, as Amended. (FSM 1580.13). (Research Joint Venture Agreements and Research Cost-Reimbursable Agreements).

4. Federal Technology Transfer Act of 1986. (FSM 1580.11). (Cooperative Research and Development Agreements).

61 - GENERAL DISCUSSION. The Forest Service may enter into other agreements that are commonly referred to as partnerships, however, they have been assigned specific agreement titles (FSM 1580). Deviations from these titles must be approved in advance by the Washington Office, Director of Procurement and Property (FSM 1580.3). Execution of these instruments shall not circumvent procurement, printing, property, or personnel procedures where their use is appropriate or required. Other agreements may be executed with non-Federal parties. In all cost-sharing arrangements, such as, Participating Agreements, Challenge Cost-Shares, and Research Joint Venture Agreements, the Forest Service and cooperators shall share mutual interests and benefit in the same qualitative way from the objective of the agreement. In Cooperative Research and Development Agreements and Research Cost-Reimbursable Agreements, the Forest Service and cooperators shall share mutual interests but not necessarily have to benefit in the same qualitative way. An example of a cost-sharing agreement where the parties share mutual interests and benefit in the same qualitative way would be where the Forest Service and the cooperator(s) share a mandate for wildlife habitat improvement, and both parties contribute significant resources to accomplish a wildlife habitat enhancement project on land under Forest Service jurisdiction. The Forest Service benefits by getting an on-the-ground project completed, and the cooperator benefits by leveraging its cash and/or other resources to complete a project that accomplishes part of its mission.

In some situations it may appear that the Forest Service and cooperator share mutual interests and benefits. However, the cooperator's contribution should be analyzed carefully. For example, when the cooperator offers to perform services, some of which are contributed gratuitously and some of which are reimbursed by

the Forest Service, the cost of reimbursing the cooperator may be the same as the rate for completion of the total project that could be obtained through competitive procurement procedures (making the cooperator's contribution meaningless). This type of project should be accomplished using Government procurement procedures.

The Forest Service may not enter into cost-sharing arrangements for goods or services where the cooperator's only motive is to obtain paid employment, even if the cooperator contributes or appears to contribute to the project. An example would be where a local contractor proposes to provide reimbursable backhoe services to dredge a pond at a discounted price, offering what appears to be a contribution. In this situation, while the Forest Service and the cooperator share mutual interests, they do not benefit in the same qualitative way since dredging the pond is of no benefit to the cooperator other than providing a source of paid employment. In addition, the discounted price offered by the cooperator may be nothing more than the competitive rate for backhoe services. This type of work should be performed pursuant to Government procurement procedures.

With the exception of Cooperative Research and Development Agreement's, it is not appropriate for the Forest Service to enter into agreements which contemplate development and sale of a product for profit, either directly or indirectly by the cooperator. The Forest Service may only entertain profit interests under contracts, permits, licenses, leases, and Cooperative Research and Development Agreement's. This chapter does not cover contracts, permits, licenses, and leases.

Do not accept cooperator language in an instrument that agrees to indemnify, defend, or hold harmless the cooperator or its agent or employees from or against any or all losses, damages, liabilities, claims or judgements resulting from, related to, or arising from the instrument.

62 - PROCEDURES FOR INITIATING, NEGOTIATING, FORMATTING, AND EXECUTING OTHER AGREEMENTS.

62.1 - Initiating Other Agreements. Either party may initiate the process for developing other agreements. Consider the following items prior to serious discussions with a potential cooperator:

1. Do not enter into such an arrangement when a potential conflict of interest or the appearance of a conflict of interest exists (7 CFR 0.735-12).

2. Do not use an organization as a "strawman" wherein the Forest Service contemplates using them to accomplish something indirectly that it is prohibited from doing directly.

3. Consider the cooperator's capability to meet its obligations, that is, financial capacity and management skills.

4. Ensure project consistency with the Forest Plan.

5. Ensure Forest Service follow-through on all aspects of the contemplated work, including administration, long-term maintenance, and subsequent funding.

6. Ensure project timeliness.

Att

United States Department of Agriculture
Forest Service
Washington Office
March 1997

# 1997 PARTNERSHIP GUIDE

Table of Contents

INTRODUCTION......2
DEFINITION OF A PARTNERSHIP......3
EVALUATING THE PROJECT AS A POTENTIAL PARTNER......5
EVALUATION QUESTIONS......5
PROCESS FOR SELECTING APPROPRIATE PARTNERSHIP INSTRUMENTS......7
Definitions......8
KEY ISSUES......11
IMAGE......11
ACKNOWLEDGMENT VS. ENDORSEMENT......13
INTERNATIONAL PARTICIPATION......16
SOLICITATION OF MONEY......17
SYMBOLS......18
GIFTS/DONATIONS VS. CONTRIBUTIONS......21
NONPROFIT ORGANIZATIONS......23
AGENCY ETHICS AND CONFLICT OF INTEREST......24
PERSONAL ETHICS AND CONFLICT OF INTEREST......27
APPENDIXES
APPENDIX A: GENERAL AUTHORITIES......28
Forest Service Manual 1580 External Relations Chapter
1580 - Grants, Cooperative Agreements, & Other Agreements......28
1580.1 Authority......29
1580.11 Government-wide Use......29
1580.12 - Service-wide Use......30
APPENDIX B: ROLE OF PARTNERSHIPS AND AUTHORITIES......32
Research......32
State and Private Forestry......33
International Forestry......35
National Forest Systems......36
Public Affairs Office......38
National Forest Foundation......38

DEFINITION OF A PARTNERSHIP

A partnership is not itself a goal, but rather a means of achieving a goal. It is a voluntary, mutually beneficial, and desired arrangement entered into between the Forest Service and another or others to accomplish mutually agreed-upon objectives that is consistent with the agency's mission and serves the public interest. The Forest Service Manual (FSM 1580.1) gives us authority to develop the concept of partnerships and specific types of agreements (see FSM 1580). We use it here in a broad sense to include different kinds of relationships, rather than a legal definition of partnerships.

Because mutual benefit is a required criterion for a partnership, we consider the following transactions as "partnerships:" Challenge Cost-Share, Joint Venture, Cost Reimbursable, Interpretive Association and Participating agreements. A partnership may also include financial assistance such as grants and cooperative agreements, where the result fulfills mutually desired goals for public benefit.

In this guide, we use the term partner only to refer to anyone we have formal partnership agreement with.

Permittees, Licensees, and Contractors

Relationships based on special use permits, licenses, or contracts are not, in and of themselves, considered partnerships as defined in this guide. However, if there is no conflict of interest or connection to their authorization and where they share common goals and motivations with the Forest Service, permittees, contractors, or licensees may enter into separate partnership agreements with the Forest Service. At that point they are considered partners for the activities discussed in the partnership agreement.

A partnership should include:

1. A written agreement between the parties.

2. Mutual interest in, mutual benefits from, or mutually desired goals of a common objective related to the mission of the agency.

3. Appropriate legal authority.

4. Voluntary participation.

5. Consistency with agency plans, policies, and priorities.

6. Evident public benefit.

7. A realistic timeframe with sufficient lead time to acquire funding, materials, and necessary approvals.

A partnership should NOT:

1. Establish a conflict of interest or appearance of conflict of interest or show preferential treatment of one entity over another.

2. Endorse commercial products, services, or entities, unless authorized.

3. Circumvent applicable legal requirements in areas such as procurement, personnel, labor laws, printing and publishing, audiovisual production, and issuance of special-use permits.

4. Be used to transfer Federal funding to third parties for purposes that are not otherwise authorized for the Forest Service to do directly. This does not limit the authorized role of the NFF and other nonprofit organizations whose charters are consistent with the various missions of the Forest Service.

5. In certain circumstances, predominantly State and Private Forestry Research, laws authorize us to support private sector's and others' products. The results of these projects culminate in marketable products for sale to the public for profit (such as wood utilization, rural community assistance, economic assistance, and technology transfer).

6. Market or promote any of the partners in any way, except in matters factually related to the partnership agreement.

Working with the National Forest Foundation

Congress gave the National Forest Foundation special authority as the official nonprofit partner of the Forest Service. Its primary objectives include helping to develop public-private partnerships to achieve mutual interests, and providing private investment in public service and resources. As such we have included information on working with the NFF and on their role in partnerships throughout this guide.